IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **ROBERT RENO, on behalf of himself and all others similarly situated,**<br><br>                    **Plaintiff,**<br>     -against-<br><br>**LIBERTY HOUSE RESTAURANT CORPORATION, a Georgia Corporation; BONES RESTAURANT CORPORATION, a Georgia Corporation; BLUE RIDGE GRILLE LLLP, a Georgia Limited Liability Limited Partnership; OK CAFÉ, LLLP, a  Georgia Limited Liability Limited Partnership; and RICHARD LEWIS, an individual,**<br><br>                    **Defendants** | Case No. _____<br><br><br><br>**COLLECTIVE ACTION COMPLAINT** |

Plaintiff Robert Reno ("Plaintiff"), individually and on behalf of all others similarly situated, by and through undersigned counsel alleges as follows:

## **NATURE OF THE ACTION**

1.      This lawsuit arises under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq., for the failure of Defendants' enterprise to pay Plaintiff and other similarly situated, tipped employees all earned minimum wages,

Defendants' illegal deduction from and withholding of tips, and Defendants' failure to pay all required overtime pay at the required regular rate.

2.     Liberty House Restaurant Corporation ("LHRC"), and its enterprise consisting of Defendants, has (and had) a policy and practice of paying its employees, including servers and bartenders, sub-minimum hourly wages under the tip-credit provisions of the FLSA (the "similarly situated" individuals or employees).

3.     Under the tip-credit provisions of the FLSA, an employer of tipped employees may, under certain circumstances, pay those employees less than the minimum hourly wage and take a "tip credit" against its minimum wage obligations. But an employer is not permitted to take a tip credit against its minimum wage obligations in any of the following circumstances: (1) when it fails to inform tipped employees of the provisions of the tip-credit subsection of those laws; (2) when it requires its tipped employees to return a portion of their tips to the employer; (3) when it requires its tipped employees to perform non-tipped work that is unrelated to the employees' tipped occupation (i.e. "dual jobs"); or (4) when it requires its tipped employees to perform non-tipped work that, although related to the employees' tipped occupation, exceeds 20 percent of the employees' time worked during a workweek. *See, e.g.*, 29 U.S.C. § 203(m) (the tip credit

provision "shall not apply with respect to any tipped employee unless such employee has been informed by the employer of the provisions of this subsection."); *Driver v. Applelllinois, LLC*, 739 F.3d 1073, 1075 (7th Cir. 2014) (Posner, J.) (explaining that when tipped employees perform "non-tipped duties" that "are unrelated to their tipped duties . . . such as, in the case of restaurant servers, washing dishes, preparing food, mopping the floor, or cleaning bathrooms, they are entitled to the full minimum wage for the time they spend at that work") (emphasis added); *Fast v. Applebee's Int'l, Inc.*, 638 F.3d 872, 880 (8th Cir. 2011) ("employees who spend 'substantial time' (defined as more than 20 percent) performing related but nontipped duties should be paid at the full minimum wage for that time"); *Bernal v. Vankar Enter., Inc.*, 579 F. Supp. 2d 804, 810 (W.D. Tex. 2008) (defendant not permitted to take the FLSA tip credit when it took plaintiffs' tips to pay for shortages and unpaid tabs).

4.    Defendants violated the FLSA by failing to inform its tipped employees of the tip-credit provisions of those laws. 29 U.S.C. § 203(m).

5.    Defendants violated the FLSA by their policy or practice of paying the restaurant's tipped employees sub-minimum, tip-credit wages even though it requires them to pay the company, from their tips for customer walkouts and for gift cards sent to customers for customer complaints, resulting in Plaintiff and the

similarly situated employees not retaining 100% of their tips and all required minimum wages.

6.     Defendants violated the FLSA by their policy or practice of paying the restaurant's tipped employees sub-minimum, tip-credit wages even when they require those employees to perform non-tipped work that is unrelated to their tipped occupation (i.e. "dual jobs"), such as: working entire "cleaning duty" shifts (which could involve up to 11 or more hours) required after receiving negative guest reviews, attending meetings, working host shifts, and performing side work such as folding napkins and polishing knives before and during shifts.

7.     Defendants violated the FLSA by their policy or practice of requiring tipped employees to perform non-tipped work that, even if it were related to their tipped occupation, exceeded 20 percent of their time worked in one or more individual workweeks, while paying them sub-minimum, tip-credit wages violates the FLSA.

8.     Defendants violated the FLSA by failing to pay tipped employees full minimum wage when they were called into work for meetings, including for example paying $2.13/hour for time attending meetings if the meeting occurred on a day when the employee was scheduled to work a tipped employee shift, or paying nothing for attending meetings if the meeting occurred on a day when the

employee was not scheduled to work (and, therefore, was unable to and blocked from clocking in to the timekeeping system).

9.      Defendants violated the FLSA by requiring tipped employees to wear uniforms (jackets and neckties) that they were required to purchase from Defendants and by then deducting those uniform expenses from Plaintiff's and the similarly situated employee's pay reducing their wages to below the minimum wage.

10.     Defendants violated the FLSA by requiring tipped employees to use Chrome Cross pens that they were required to purchase, including on occasion by direct purchase from Defendant for which Defendant paid itself by deduction from wages, thereby reducing their tip-credit paid subminimum wages to below the minimum wage.

11.     Defendants violated the FLSA by failing to factor all non-excludable remuneration for employment into the overtime rate paid to its tipped employees, including but not limited to by paying overtime at the rate of $5.76/hour thereby failing to account for the hours worked as (non-tipped) hosts paid by "HOSTPAY."

## THE PARTIES

12.     Plaintiff Robert Reno ("Plaintiff") is a resident of Georgia.

13.     According to its corporate filings with the Georgia Secretary of State, Defendant LHRC is a Georgia corporation with its principal office located at 3150 Piedmont Road, Suite C, Atlanta, Georgia 30305 and may be served with process on its registered agent Richard Lewis at that address, which is within this judicial district.

14.     According to its corporate filings with the Georgia Secretary of State, Defendant Bones Restaurant Corporation ("BRC") is a Georgia corporation with its principal office located at 3150 Piedmont Road, Suite C, Atlanta, Georgia 30305 and may be served with process on its registered agent Richard Lewis at that address, which is within this judicial district.

15.     According to its corporate filings with the Georgia Secretary of State, Defendant Blue Ridge Grille LLLP is a Georgia Limited Liability Limited Partnership with its principal office located at 3150 Piedmont Road, Suite C, Atlanta, Georgia 30305 and may be served with process on its registered agent Richard Lewis at that address, which is within this judicial district.

16.     According to its corporate filings with the Georgia Secretary of State, Defendant OK Cafe LLLP is a Georgia Limited Liability Limited Partnership with its principal office located at 3150 Piedmont Road, Suite C, Atlanta, Georgia

30305 and may be served with process on its registered agent Richard Lewis at

that address, which is within this judicial district.

17.     Defendant Richard Lewis has an office address of 3150 Piedmont

Road, Suite C, Atlanta, Georgia 30305 and, upon information and belief, a

residential address in Georgia.

18.     Defendant Liberty House Restaurant Corporation owns three

restaurants in the Atlanta, Georgia area: Bones Restaurant (a/k/a Bone's

Restaurant)[1] ("Bones"), Blue Ridge Grill ("Blue Ridge"), and OK Café ("OK

Café").

19.     Defendant Liberty House Restaurant Corporation operates three

restaurants in the Atlanta, Georgia area: Bones, Blue Ridge, and OK Café.

20.     Defendant Liberty House Restaurant Corporation manages three

restaurants in the Atlanta, Georgia area: Bones, Blue Ridge, and OK Café.

21.     Defendant Liberty House Restaurant Corporation manages the

personnel, including but not limited to compensation of personnel, working in

three restaurants in the Atlanta, Georgia area: Bones, Blue Ridge, and OK Café.

22.     Defendant BRC is an owner of and/or manages Bones restaurant.

---

[1] The restaurant uses both "Bones" and "Bone's" as its restaurant name on its
website. https://bonesrestaurant.com/.

23.   Defendant BRC operates Bones restaurant.

24.   Defendant BRC manages Bones restaurant.

25.   Defendant BRC manages the personnel, including but not limited to compensation of personnel, working in Bones restaurant.

26.   Defendant BRG is an owner of and/or manages Blue Ridge restaurant.

27.   Defendant BRG operates Blue Ridge restaurant.

28.   Defendant BRG manages Blue Ridge restaurant.

29.   Defendant BRG manages the personnel, including but not limited to compensation of personnel, working in Blue Ridge restaurant.

30.   Defendant OKC is an owner of and/or manages OK Café restaurant.

31.   Defendant OKC operates OK Café restaurant.

32.   Defendant OKC manages OK Café restaurant.

33.   Defendant OKC manages the personnel, including but not limited to compensation of personnel, working in OK Café restaurant.

34.   Upon information and belief, Defendant Richard Lewis is an owner of Defendant LHRC.

35.   Upon information and belief, Defendant Richard Lewis is the managing principal of Defendant LHRC.

36.     Upon information and belief, Defendant Richard Lewis is an owner of Defendant BRC.

37.     Upon information and belief, Defendant Richard Lewis is the managing principal of Defendant BRC.

38.     Upon information and belief, Defendant Richard Lewis is an owner and/or General Partner of Defendant BRG.

39.     Upon information and belief, Defendant Richard Lewis is the managing principal of Defendant BRG.

40.     Upon information and belief, Defendant Richard Lewis is an owner and/or General Partner of Defendant OKC.

41.     Upon information and belief, Defendant Richard Lewis is the managing principal of Defendant OKC.

42.     Upon information and belief, Defendant Lewis, at all times during the relevant period throughout the date of this Complaint, was the corporate officer and/or managing General Partner with operational control over Plaintiff's and the similarly situated employees' employment at the Bones, Blue Ridge, and OK Café restaurants.

43.     Defendant Lewis is, and was at times throughout the relevant FLSA period at issue in this Complaint, the Chief Executive Officer of Defendant LHRC.

44.     Defendant Lewis is, and was at times throughout the relevant FLSA period at issue in this Complaint, the Chief Executive Officer of Defendant BRC.

45.     Defendant Lewis is, and was at times throughout the relevant FLSA period at issue in this Complaint, a General Partner of Defendant BRG.

46.     Defendant Lewis is, and was at times throughout the relevant FLSA period at issue in this Complaint, a General Partner of Defendant OKC.

47.     At all times throughout the relevant period, Defendant Lewis was a corporate officer or managing General Partner of Defendants LHRC, BRC, BRG, and OKC.

48.     At all times throughout the relevant period in this Complaint and thereafter, Defendant Lewis is and was responsible for Plaintiff's compensation and for payment of Plaintiff's wages and those of the similarly situated employees under the FLSA, and was a corporate officer and/or managing General Partner with operational control of the Defendants' covered enterprise, and is therefore liable in an individual capacity as an "employer" for Defendants' failure to pay

minimum wage and overtime compensation to Plaintiff and the similarly situated employees in violation of the FLSA.

49.    As the CEO and/or managing General Partner respectively of the entities owning and/or operating the enterprise's restaurants, Defendant Lewis controls the day-to-day decisions of the restaurants by making strategic, operational and policy decisions, and exerting operational control over them. Moreover, Defendant Lewis has the power to hire and fire the restaurants' employees, discipline employees, create and enforce employee policies, and set employee compensation. Furthermore, Defendant Lewis was responsible for enforcing the policies that resulted in payment of subminimum wages and failre to retain 100% of tips in violation of the FLSA. Therefore, Defendant Lewis is individually liable as an employer as defined in § 3(d) of the FLSA, 29 U.S.C. § 203(d).

50.    Upon information and belief, Defendant LHRC was an employer of Plaintiff and of all similarly situated employees at Bones restaurant throughout the relevant period.

51.    Upon information and belief, Defendant BRC was an employer of Plaintiff and of all similarly situated employees at Bones restaurant throughout the relevant period.

52.     Upon information and belief, Defendant BRG was an employer of all similarly situated employees at Blue Ridge Grille restaurant throughout the relevant period.

53.     Upon information and belief, Defendant OKC was an employer of all similarly situated employees at OK Café restaurant throughout the relevant period.

54.     Defendant LHRC is a General Partner of Defendant OK Cafe LLLP, as stated in its last corporate filing with the Georgia Secretary of State.

55.     Defendant Lewis is the Authorizer of Defendant OK Cafe LLLP in its last annual corporate filing with the Georgia Secretary of State, and has the Authorizer Title of General Partner, as stated in its last corporate filing with the Georgia Secretary of State.

56.     Defendant OK Cafe LLLP is in non-compliant status with the Georgia Secretary of State's Office due to failure to file annual corporate registration since 2018.

57.     Defendant Blue Ridge Grille LLLP is a Georgia Limited Liability Limited Partnership having a principal office address of 3150 Piedmont Rd, Suite C, Atlanta, GA 30305, and may be served through its registered agent, Richard Lewis, at that address.

58.     Defendant LHRC is a General Partner of Defendant Blue Ridge Grille

LLLP, as stated in its last corporate filing with the Georgia Secretary of State.

59.     Defendant Lewis is the Authorizer of Defendant Blue Ridge Grille LLLP in its last annual corporate filing with the Georgia Secretary of State, and has the Authorizer Title of General Partner, as stated in its last corporate filing with the Georgia Secretary of State.

60.     Defendant Blue Ridge Grille LLLP is in non-compliant status with the Georgia Secretary of State's Office due to failure to file annual corporate registration since 2018.

61.     Defendant LHRC, Defendant Lewis, Defendant BRC, Defendant BRG, and Defendant OKC are and/or were during the relevant period an "enterprise" as defined by Section 3(r)(1) of the FLSA. 29 U.S.C. § 203(r)(1).

62.     Defendants' restaurants are engaged in related activities performed for a common business purpose, through unified operation or common control.

63.     Defendants LHRC, BRC, BRG, and OKC share one or more common owners.

64.     Plaintiff is a covered employee under the FLSA.

65.     Defendants LHRC, BRC, BRG, and OKC are an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1)(A) of the FLSA. 29 U.S.C. § 203(s)(1)(A).

13

66.     Defendants LHRC, BRC, BRG, and OKC are an enterprise that has (and, during the relevant period, had) employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for interstate commerce by any person. 29 U.S.C. § 203(s)(1)(A)(i).

67.     Plaintiff individually engaged in commerce, and/or engaged in the production of goods for commerce, during the course of performing work for Defendants' enterprise during the relevant period. 29 U.S.C. § 207(a)(1).

68.     During the relevant period, Plaintiff regularly engaged in banking or credit card transactions, served out-of-state customers, and received or handled goods or materials from out-of-state sources, including but in no way limited to uniforms (required monogrammed jackets) and Chrome Cross pens (from A.T. Cross Company headquartered in Providence, Rhode Island).

69.     Defendant LHRC's annual gross volume of sales made or business done has exceeded $500,000 in each of the calendar years applicable to the relevant period.

70.     Defendant BRC's annual gross volume of sales made or business done has exceeded $500,000 in each of the calendar years applicable to the relevant period.

71.     Defendant BRG's annual gross volume of sales made or business

14

done has exceeded $500,000 in each of the calendar years applicable to the relevant period.

72.    Defendant OKC's annual gross volume of sales made or business done has exceeded $500,000 in each of the calendar years applicable to the relevant period.

73.    Plaintiff worked for Defendants' enterprise primarily in the position of server at the Bones restaurant from approximately 1997 until approximately January, 2020 (Plaintiff's "period of employment"), including the period beginning three years preceding the filing date of this Complaint and continuing through the end of his period of employment (the "relevant period").

74.    Defendants paid Plaintiff less than minimum wage to work as a server ($2.13 per hour during the relevant time period).

75.    Under 29 U.S.C. § 203 (m), an employer utilizing a tip credit compensation plan to pay sub-minimum wages must inform its tipped employees in advance of its intention to use such plan pursuant to Section 203(m) of the FLSA.

76.    Under Section 203(m) of the FLSA, an employer is not entitled to utilize a tip credit compensation plan unless it informs its tipped employees of the following in advance: (1) the amount of the sub-minimum wage cash wage that is to be paid to the respective tipped employee; (2) the amount by which the wages of the

respective tipped employee are decreased on account of the tip credit; (3) that all tips received by the employee must be retained by the employee except for tips contributed to a valid tip pool and, (4) that the tip credit shall not apply to any employee who does not receive the Section 203(m) notice.

77.     Defendants did not provide Plaintiff with notification of the tip-credit provisions as required by the FLSA.

78.     Defendants failed to inform Plaintiff and, on information and belief, likewise failed to inform the similarly situated employees of the Section 203(m) four-point notice requirements before or after the beginning of their employment.

79.     As a result of Defendants' failure to inform Plaintiff and the similarly situated employees of the aforementioned Section 203(m) "tip credit" four-point notice requirements, Defendants have disqualified themselves from eligibility for such a plan during all times material in the relevant period.

80.     Consequently, Defendants are liable to Plaintiff and the similarly situated employees for all hours worked within weekly pay periods at the applicable FLSA minimum wage rate of pay of $7.25 per hour, and any related overtime at the applicable FLSA overtime rate of pay one and one-half times their regular hourly rate of pay for hours over forty (40) per week during all times material to this lawsuit, within the relevant period.

81.     In addition, while paying Plaintiff less than minimum wage to work as a server, Defendants required Plaintiff to spend over 20 percent of his work time in one or more individual workweeks performing work where he did not interact with customers and did not have the opportunity to earn tips.

82.     Below are non-exhaustive examples of the work Defendants required Plaintiff to perform as a server paid by tip-credit where he did not interact with customers and did not have the opportunity to earn tips:

- Attending meetings, including but not limited to, pre-shift meetings every shift;

- Folding napkins;

- Polishing knives;

- Other opening work;

- Working "cleaning duty shifts," including but not limited to a full day "cleaning duty shifts"; and

- Working shifts exclusively as host ("host shifts").

83.     Defendants required Plaintiff to wear a uniform and then deducted the amount of the uniform from Plaintiff's wages that had been paid at $2.13 per hour.

## JURISDICTION & VENUE

84.     This Court has jurisdiction over Plaintiff's FLSA claims pursuant to

29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

85.     Venue is proper in this judicial district under 28 U.S.C. § 1391

because Defendants operatef restaurants in this judicial district, Plaintiff worked

for Defendants in this judicial district for which he received his paychecks in this

judicial district, and a substantial part of the events giving rise to the claims herein

occurred in this judicial district.

86.     Defendants are subject to personal jurisdiction in this district.

## **FLSA COLLECTIVE ACTION ALLEGATIONS**

87.     Plaintiff incorporates herein the allegations contained in the preceding

"Nature of the Action" section of this Complaint.

88.     Pursuant to 29 U.S.C. § 216(b), Plaintiff seeks to prosecute his FLSA

claims individually and as a collective action on behalf of all persons who worked

at any of Defendants' restaurants in the last three (3) years and were paid sub-

minimum, tip-credit hourly wages[2] (the "Collective Action Members").

89.     Defendants are aware or should have been aware that federal law

requires it to pay tipped employees full minimum wage when it: (a) fails to inform

---

[2] Plaintiff reserves the right to amend this definition based on discovery or legal
developments.

tipped employees of the tip-credit provisions of the FLSA; and (b) requires tipped

employees to perform non-tipped work that is (i) unrelated to their tipped

occupation, or (ii) exceeds 20 percent of their time worked during individual work

weeks.

90.    Defendants are aware or should have been aware that federal law

requires them to pay tipped employees minimum wage for all hours worked.

91.    Defendants are aware or should have been aware that federal law

prohibits an employer from making deductions, including for required uniforms,

from employees' wages when such deductions cause the employees' wages to fall

below the minimum wage.

92.    Plaintiff is similarly situated to Defendants' other employees paid by

tip-credit because those employees were also paid sub-minimum hourly wages and

did not receive 100% of their tips while they were subject to Defendants' illegal

policy or practice of: (a) failing to inform them of the tip-credit provisions of the

FLSA; (b) requiring them to perform non-tipped work that is (i) unrelated to their

tipped occupation, or (ii) exceeds 20 percent of their time worked during

individual work weeks; (c) not paying them a minimum wage for all hours

worked, including required meetings on their days off work; (d) deducting

uniform costs from their wages causing their wages to fall below the minimum

wage; and (e) requiring them to pay the company, from their tips for customer walkouts, and requiring them to pay for gift cards sent to customers for customer complaints.

93.     There are numerous similarly situated current and former tipped employees who worked at Defendants' restaurants who would benefit from the Court authorizing issuance of notice of this lawsuit so that these employees may opt in to this lawsuit.

94.     Their similarly situated employees paid by tip-credit are known to Defendants and are identifiable in Defendants' payroll records.

## COMMON FACTUAL ALLEGATIONS

95.     Plaintiff incorporates herein the allegations contained in the preceding "Nature of the Action" section of this Complaint.

96.     Defendants, separately and as an enterprise, employed Plaintiff and the similarly situated employees during the relevant period.

97.     Defendants maintained control, oversight, and discretion over the operation of all of its enterprise's company-owned restaurants, including its employment practices with respect to tipped employees.

98.     Plaintiff's and the similarly situated employees' work was performed in the normal course of Defendant's enterprise's business and was integrated into

it.

99.   All of the work that the Plaintiff and the similarly situated employees performed was assigned by Defendants' enterprise, and/or Defendants' enterprise was aware of all of the work that they performed.

100.   During Plaintiff's employment, Defendants' enterprise required Plaintiff and the similarly situated employees to perform non-tipped work each shift in addition to serving customers.

101.   When Plaintiff and the similarly situated employees performed non-tipped work, they did not interact with customers and did not have the opportunity to earn tips.

102.   During Plaintiff's and the similarly situated employees' employment, Defendants' enterprise required them to perform non-tipped work before its restaurants were open to customers.

103.   During Plaintiff's and the similarly situated employees' employment, Defendants' enterprise had no policies prohibiting tipped employees from performing certain types, or excessive amounts, of non-tipped work.

104.   During Plaintiff's and the similarly situated employees' employment, Defendants' enterprise did not record or track the amount of time tipped employees spent performing non-tipped work.

105.   During Plaintiff's and the similarly situated employees' employment, Defendants' enterprise required them to wear uniforms, but one or more Defendants then deducted the cost of the uniforms from their wages causing their wages to fall below the minimum wage.

106.   During Plaintiff's and the similarly situated employees' employment, Defendants' enterprise required them to attend meetings. When those meetings occurred on a day where the Plaintiff or the similarly situated employee was not scheduled to work a regular shift, Defendants did not allow them clock in for the meeting, and they were not paid for that meeting time. If the meeting occurred on a day when the Plaintiff or the similarly situated employees was scheduled to work, they were paid at the subminimum, tip-credit rate for the meeting time.

## FIRST CAUSE OF ACTION
### Fair Labor Standard Act – Minimum Wages
### On Behalf of Plaintiff and the FLSA Collective

107.   Plaintiff realleges and incorporates the previous paragraphs of this Complaint as if fully set forth in this First Cause of Action.

108.   This Count I arises from Defendants' violation of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, for its failure to pay minimum wages to Plaintiff and the similarly situated employees.

109.   Plaintiff brings this Count as a collective action under Section 16(b)

of the FLSA.

110.   Plaintiff's consent form to act as a representative plaintiff is attached hereto as Exhibit A.

111.   During the entire course of his employment by Defendants' enterprise, Plaintiff and the similarly situated employees were not exempt from the minimum wage provisions of the FLSA.

112.   In one or more individual workweeks during his employment, Plaintiff's average compensation (i.e. total weekly compensation divided by total weekly hours), excluding tips, fell below minimum wage.

113.   Defendants' enterprise violated the FLSA by requiring Plaintiff and the similarly situated employees to perform non-tipped work that is unrelated to their tipped occupation while paying them less than minimum wage.

114.   Defendants also violated the FLSA by requiring Plaintiff and the similarly situated employees to perform non-tipped work that, even if related to their tipped occupation, exceeded twenty (20) percent of their time worked in one or more individual workweeks without paying them full minimum wage.

115.   Defendants further violated the FLSA by taking a tip credit against the minimum wages of Plaintiff and the similarly situated employees without informing them of the tip credit provisions of the FLSA.

116.   Defendants violated the FLSA by failing to pay Plaintiff and the similarly situated employees for all hours worked.

117.   Defendants also violated the FLSA by deducting the costs of Plaintiff's and the similarly situated employees' uniforms from their wages resulting in receiving less than the minimum wage and resulting in Plaintiff and the similarly situated employees not receiving 100% of their tips.

118.   Defendants also violated the FLSA by deducting from Plaintiff's and the similarly situated employees' pay (or by requiring them to bear employer expense resulting in a de facto deduction from their pay) for customer walkouts and for gift cards sent to customers for customer complaints, resulting in Plaintiff and the similarly situated employees not retaining 100% of their tips and all required minimum wages.

119.   As but one specific example, on his payroll check having a check date of April 25, 2019, Plaintiff's net pay was deducted (using Description "MISC") by $251.56 for a customer walkout that occurred on or about April 15, 2019.

120.   Defendants' violations of the FLSA were willful.

**SECOND CAUSE OF ACTION**
**Fair Labor Standard Act – Overtime Wages**
**On Behalf of Plaintiff and the FLSA Collective**

121.   Plaintiff realleges and incorporates the paragraphs of this Complaint

preceding the First Cause of Action as if fully set forth in this Second Cause of Action.

122.   This count arises from Defendants' violation of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, for its failure to pay overtime wages to Plaintiff and the similarly situated employees at the required regular rate.

123.   Plaintiff brings this Count as a collective action under Section 16(b) of the FLSA.

124.   Plaintiff's consent form to act as a representative plaintiff is attached hereto as Exhibit A.

125.   During the entire course of his employment by Defendants' enterprise, Plaintiff and the similarly situated employees were not exempt from the overtime wage provisions of the FLSA.

126.   In one or more individual workweeks during his employment within the relevant period, Defendants violated the FLSA by failing to factor all non-excludable remuneration for employment into the overtime rate paid to Plaintiff and its similarly situated tipped employees, including but not limited to by paying overtime at the rate of $5.76/hour for hours worked over 40 in a workweek in which the employee worked hours as (non-tipped) hosts (payment for which hours was reflected as "HOSTPAY" on pay stubs), thereby failing to account for the

hours worked as (non-tipped) hosts paid by "HOSTPAY."

127.   As but one example, on the paycheck having a pay date of June 14, 2018, Plaintiff worked hours as a host on an assigned host shift (non-tipped) paid by lump sum $300 amount, in addition to his tipped employee lunch and dinner shifts, but despite working over 40 hours in the workweek at issue paid by that paycheck he was paid overtime at only the tip-credit overtime rate of $5.76/hour.

128.   Defendants' servers frequently work assigned host shifts as non-tipped hosts, on average approximately once a month or more.

129.   Defendants' violations of the FLSA's overtime requirements were willful.

## PRAYER FOR RELIEF

Therefore, Plaintiff seeks a judgment finding joint and several liability under the FLSA and entering the following relief on behalf of himself and the similarly situated employees:

A.   Judgment in the amount of the owed minimum wages for all time worked by Plaintiff and the similarly situated employees;

B.   Judgment in the amount of the tips given by customers for Plaintiff and the similarly situated employees that those workers did not receive due to Defendants' policies;

C.      Judgment in the amount of the owed overtime wages for all time worked over 40 hours in a workweek within the relevant period by Plaintiff and the similarly situated employees;

D.      An award of liquidated damages in the full amount under the FLSA;

E.      An award of damages representing the employer's share of FICA, FUTA, state unemployment insurance, and any other required employment taxes on unpaid wages;

F.      An award of all allowable interest;

G.      An award of costs and all expenses of litigation in this action together with reasonable attorney's fees and an award of a service payment to the Plaintiff; and

H.      Such other and further relief as this Court deems just and proper.

Dated: June 3, 2020

Respectfully submitted,

*/s/ C. Andrew Head*
C. Andrew Head, GA Bar No. 341472
Bethany Hilbert (to be admitted *pro hac vice*)
**HEAD LAW FIRM, LLC**
1170 Howell Mill Rd NW, Ste 305
Atlanta, GA 30318 (satellite office)
4422 N. Ravenswood Ave.
Chicago, IL 60640 (resident office)

T: (404) 924-4151
F: (404) 796-7338
E: ahead@headlawfirm.com
bhilbert@headlawfirm.com

*Attorneys for Plaintiff*